# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| ALICE GEIGER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 07-CV-681-WDS-DGW |
| | ) | |
| COORDINATED YOUTH AND | ) | |
| HUMAN SERVICES, PRUDENTIAL | ) | |
| INSURANCE CO. OF AMERICA, | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge**

Before the Court is defendant Prudential Insurance Co. Of America's (Prudential) motion for summary judgment (Doc. 27) to which plaintiff has filed a response (Doc. 34) and a cross motion for summary judgment (Doc. 31). Defendant Prudential has filed a response in opposition to the cross motion for summary judgment (Doc. 35).

## BACKGROUND

Plaintiff filed this action seeking long-term disability benefits under an employee welfare benefit plan (the Plan) which is sponsored and maintained by plaintiff's employer, defendant Coordinated Youth and Human Services (CYHS). The long-term disability benefits (disability benefits, or benefits) are underwritten by defendant Prudential, in accordance with Group Policy G-8186 (the Policy). The record reveals that Plaintiff was hired by CYHS as a registered nurse in January of 2002. That position was classified as "light duty" which included carrying up to 10 pounds frequently, 20 lbs occasionally and/or frequent walking, standing or constant pushing and pulling. (R. at 715-16). Plaintiff last worked at CYHS on July 30, 2004. In August of 2004, she submitted an application for disability benefits, stating that rheumatoid arthritis and fibromyalgia

prevented her from working, caused her pain and weakness and interfered with her ability to perform her job as a registered nurse. She was evaluated by a Dr. Andrew Baldassare, her attending physician, who stated that she was limited due to fibromyalgia which began in March of 2003, and that her prognosis to return to work was poor due to joint pain. (R. 712-13). Prudential undertook a review of her medical records and denied her application for disability benefits on the basis that there was not medical support in her record for this diagnosis.

Pursuant to a request by plaintiff, Prudential undertook a review of the denial in February of 2005. Prudential consulted with Sharon Hogan, M.D., and in March of 2005 advised plaintiff that she was entitled to receive benefits effective November 2004, under the "regular occupation" definition of Total Disability in the Policy.

In January of 2006, Prudential undertook a follow-up investigation, and asked plaintiff to complete a questionnaire, Activities of Daily Life. In that questionnaire, plaintiff listed her medical conditions as rheumatoid arthritis; fibromyalgia; asthma/SOB; reflux/hiatal hernia; recurrent sinus infections; hypertension; depression; allergies; poor sleep with medication; and cataracts. (R. 288). She provided a list of her medications and stated that she used a cane and a rolling chair to walk (R. 290-92). She stated she drove 20 miles a week, and would not be able to use airplane transportation (R. 293). In February of 2006, Prudential recommended a full review of her medical records and a home visit to determine the level of her disability.

Prudential had Donald W. Abbott, M.D. review her files, and he determined that plaintiff did not have objective evidence of fibromyalgia. He stated that for fibromyalgia the current recommendation for treatment was to "stay active" which she had not done. (R. 285). Dr. Abbott stated that none of plaintiff's diagnoses seemed to be impairing, but that her depression might be

2

involved.[1] Plaintiff was notified that her initial temporary benefits would end on October 31, 2006, and that after that time Prudential would be conducting a thorough evaluation of her eligibility to receive benefits. (R. 868-69).

Prudential conducted a personal interview with plaintiff, by Crisney Powell of MJM Investigations. In addition, MJM Investigations conducted surveillance of plaintiff. The surveillance showed her, inter alia, walking, standing, using a cane, shopping, using a shopping cart, entering and exiting a car on May 12, 2006, and May 13, 2006.

On July 11, 2006, Dr. Abbott reviewed the surveillance and determined that plaintiff was mobile, and that the cane was more of a prop than a walking assistance device. On July 25, 2006, plaintiff was advised by Prudential that she no longer qualified as disabled under the policy and therefore her long-term disability benefits would terminate as of July 1, 2006. The benefits were, thereafter, extended to July 31, 2006. As part of the denial, Prudential stated that Dr. Baldassare's rheumatologic tests had been negative, and did not support a diagnosis of figromyalgia, and that although there was a recommendation that plaintiff participate in an exercise program to combat fibromyalgia, there was no evidence that she did so. Plaintiff was referred to Drs. Kopjas and McGarry who both found her neurological examination to be normal (R. 866).

Plaintiff appealed the termination of her long-term disability benefits and included a letter from Dr. Baldassare who stated that she could not work, could not sit or stand for any length of time, and could not bend, stand, stoop or lift. Dr. Baldassare stated in a follow-up letter in

---

[1] The record reveals that plaintiff reported a history of depression that began in 1999 to her physician, Dr. Baldassare, in 2001. She began treatment with Zoloft at that time. Plaintiff has, throughout her medical records, indications of depression between 2002-2005.

3

January of 2007 that although plaintiff's tests were negative, there was, in his opinion, "no question" that her disease met the American College of Rheumatology's criteria for rheumatoid arthritis (R. 146). Included in the plaintiff's submissions to Prudential were this letter, transcribed records, and additional notes of Dr. Baldassare that plaintiff had "18 of 18" trigger points for fibromyalgia.

Prudential undertook a second medical review in April of 2007, by Paul Howard, M.D., who has a specialty in rheumatology. Dr. Howard concluded that plaintiff did not, from a rheumatological perspective, have any degree of impairment applicable to a diagnosis of rheumatoid arthritis or fibromyalgia syndrome. (R. 137). Although plaintiff had, apparently, 18 trigger points, there was no corresponding functional impairment. (*Id.*) He also found her medical records to be devoid of objective evidence of inflammatory arthritis and no functional impairment with fibromyalgia. He found her not to be impaired as of August, 2006 forward, and that her pain complaints were not consistent with any diagnostic testing or physical examination findings.

### 1. Cross Motions for Summary Judgment

Prudential seeks summary judgment on the grounds that plaintiff is not entitled to benefits under the terms and conditions of the policy, or in the alternative, Prudential seeks judgment pursuant to Fed. R. Civ. P. 52. Plaintiff seeks summary judgment on the grounds that the decision to deny her long-term disability benefits was not supported by the weight of the evidence.

A district court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c): *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). The moving party initially bears the burden to demonstrate an absence of genuine issues of material fact, indicating that judgment should be granted as a matter of law. *See, Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir. 1999) (citing *Celotex*, 477 U.S. at 323). Once a motion for summary judgment has been made and properly supported, however, the non-movant has the burden of setting forth specific facts showing the existence of a genuine issue for trial. *See, id.* In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable and justifiable inferences in that party's favor. *See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, the Court will not resolve factual disputes, weigh conflicting evidence, or make credibility determinations. *See, Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001); *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

### 2. Critical Policy Provisions

The Policy (R. 41) provides that a participant is "disabled" when Prudential determines that:

> - you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
> - you are under the regular care of a doctor; and
> - you have a 20% or more loss in your monthly earnings due to that sickness or injury . . .
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:
> - you are unable to perform the duties of any gainful occupation
>
> After 24 months, the definition of disability changes as follows: a participant is "disabled"

when Prudential determines that due to the same illness or injury:

- you are unable to perform the duties any gainful occupation for
which you are reasonably fitted by education, training or experience; and
- you are under the regular care of a doctor.

The policy further provides for a limited pay of 24 months for disabilities based upon self-reported symptoms or mental illness:

> Disability due to a sickness or injury which, as determined by Prudential, are primarily based on self-reported symptoms have a limited pay period during your lifetime.
>
> The limited pay period for self-reported symptoms and mental illness combined is 24 months during your lifetime.

## **DISCUSSION**

Under ERISA, a plan participant may bring a civil action to "recover benefits due to [her] under the terms of [her] plan." 29 U.S.C. § 1132(a)(1)(B).

### 1. **Standard of Review**

In actions challenging denials of benefits under 29 USC § 1132(a)(1)(B), a district court reviews decisions of plan administrators de novo, except when plan gives administrator discretion to interpret plan terms or otherwise to determine benefits eligibility. *Ruttenberg v. United States Life Ins. Co.*, 413 F.3d 652, 658 (7th Cir. 2005). Here, the parties agree that the Court should review the decision of Prudential under the de novo standard.

### 2. **Plaintiff's Claim for Disability**

In this case, the Court FINDS that Prudential's determination to deny plaintiff's claim of disability due to fibromyalgia is supported by the record. Although Prudential accepted plaintiff's claim of suffering from fibromyalgia, that alone is not enough to support a finding of disability. See, eg. *Estok v. Apel*, 152 F.2d 636, 640 (7th Cir. 1998). "It is not enough to show

that [plaintiff] had received a diagnosis of figromyalgia . . . since fibromyalgia is not always (indeed, not usually) disabling." This Circuit has noted that fibromyalgia is a difficult syndrome whose "causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996). As the *Sarchet* court noted, " All of these symptoms [of fibromyalgia] are easy to fake. . ." *Id.* at 307. Therefore, the mere fact that plaintiff has some of the symptoms, including trigger points, is not enough to establish a disability within the terms of the Policy.

Here, Prudential found, after initially granting temporary disability benefits, that upon thorough review, plaintiff did not have objective evidence of disability to support her complaints of ongoing pain and disability rendering her unable to work. Prudential did extensive reviews and re-reviews of plaintiff's medical records, and further investigation of her claims. Plaintiff was observed ambulating, using the cane as more of a prop than as an ambulatory assistant, and also failed to clearly demonstrate her inability to perform the regular duties of a registered nurse. The Court notes that Prudential was not under an obligation to conduct independent medical examinations of plaintiff, and could and did properly use its consulting experts, including a Board certified Rheumatologist, to examine plaintiff's medical records and claims. *Wallace v. Reliance Standard Life Ins. Co.,* 318 F.3d 723, 724 (7th Cir. 2003). There simply is no requirement that the Plan conduct its own physical examination of the plaintiff in order to deny benefits. *Sperandeo v. Lorillard Tobacco Co.,* 460 F.3d 866, 876 n.9 (7th Cir. 2006) "an independent medical examination is 'an option, not an obligation' for plan administrators." And, it is well settled that it is appropriate for an insurer to rely upon consulting physician's reports, *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 577 (7th Cir. 2006).

7

Accordingly, the Court **FINDS**, after de novo review, that the decision of Prudential to terminate plaintiff's disability benefits is supported by the record, and that Prudential is entitled to summary judgment on this claim. The Court **FURTHER FINDS** that plaintiff is not entitled to summary judgment.

Accordingly, the Court **GRANTS** summary judgment in favor of defendant Prudential Insurance Company and against plaintiff, Alice Geiger, on all claims. The Court, sua sponte, **DISMISSES** plaintiff's claim against her employer, Coordinated Youth and Human Services. The Court **DENIES** plaintiff's cross motion for summary judgment on all grounds.

The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

Each Party shall bear its own costs. The Court **DENIES** Prudential's request for an award of attorneys fees pursuant to 29 U.S.C. § 1132(g).

**IT IS SO ORDERED.**

**DATE: July 8, 2009**

                                            **s/ WILLIAM D. STIEHL**
                                              **DISTRICT JUDGE**